UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| SUSAN SWARTWOOD, et al.,<br><br>                Plaintiffs,<br><br>      v.<br><br>FUN-TASTIC SHOWS INC., et al.,<br><br>                Defendants. | CASE NO. C17-5971 BHS<br><br>ORDER RESERVING RULING ON DEFENDANT FUN-TASTIC'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND REQUESTING PROPOSED QUESTIONS FOR CERTIFICATION |

This matter comes before the Court on Defendant Fun-Tastic Shows, Inc.'s ("Fun-Tastic") motion for partial summary judgment. Dkt. 36. The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby reserves ruling on the motion and directs the parties to submit briefing that includes proposed questions for certification to the Washington Supreme Court.

**I. PROCEDURAL AND FACTUAL BACKGROUND**

On May 18, 2017, Plaintiffs Susan Swartwood, Crystal Groth, and minor M.G.S. ("Plaintiffs"), attended Fun-Tastic's Rhododendron Festival in Port Townsend, Washington. Dkt. 15, ¶ 3.1. Plaintiffs were riding together in one of the gondolas on the

festival's Ferris wheel when the gondola turned upside down. *Id*. ¶¶ 3.3, 3.5.[1] Plaintiffs all fell from the gondola and were injured. *Id*. ¶ 3.9.

On November 6, 2017, Plaintiffs filed a complaint against Fun-Tastic in the Jefferson County Superior Court for the State of Washington. Dkt. 1-1. Plaintiffs asserted claims for negligence, product liability, and premises liability based on the accident. *Id.* On November 21, 2017, Fun-Tastic removed the matter to this Court. Dkt. 1. On April 23, 2018, Plaintiffs amended their complaint to add High-Lite Rides, Inc. ("High-Lite"), an alleged designer and manufacturer of the Ferris wheel, as a defendant. Dkt. 15.

On February 20, 2019, Fun-Tastic moved for partial summary judgment on Plaintiffs' claims under the Washington Product Liability Act, RCW Chapter 7.72 ("WPLA"). Dkt. 36. On March 11, 2019, Plaintiffs responded. Dkt. 40. On March 15, 2019, Fun-Tastic replied. Dkt. 43.

## II. DISCUSSION

Fun-Tastic's motion is based on its contention that it manufactures no products and sells no products, and thus it cannot be subject to claims under the WPLA. Dkt. 36 at 5.

**A. Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material

---

[1] The particular Ferris wheel at issue was named the "Phoenix Wheel." Dkt. 1-1 ¶ 3.3. The parties use both terms in their briefing. The Court will use the more recognizable term "Ferris wheel."

fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial—e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory,

nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990).

**B.      Merits**

The available authority on this issue is minimal, and beyond the text of the statute, none of it is controlling. The Court will first set out the parties' arguments based on the WPLA's text, and then turn to the persuasive authority.

**1.      Statutory Text**

The WPLA defines "product seller" as:

> any person or entity that is engaged in the business of selling products, whether the sale is for resale, or for use or consumption. The term includes a manufacturer, wholesaler, distributor, or retailer of the relevant product.

RCW 7.72.010(1). Product sellers generally do not include sellers of real property, providers of professional services, commercial resellers of used products, finance lessors, or pharmacists. RCW 7.72.010(1). The term "manufacturer":

> includes a product seller who designs, produces, makes, fabricates, constructs, or remanufacturers the relevant product or component part of a product before its sale to a user or consumer. The term also includes a product seller or entity not otherwise a manufacturer that holds itself out as a manufacturer.
>
> A product seller acting primarily as a wholesaler, distributor, or retailer of a product may be a "manufacturer" but only to the extent that it designs, produces, makes, fabricates, constructs, or remanufacturers the product for sale.

RCW 7.72.010(2). A product manufacturer is subject to liability to a claimant under the statute:

> If the claimant's harm was proximately caused by the negligence of the manufacturer in that the product was not reasonably safe as designed or not

> reasonably safe because adequate warnings or instructions were not provided.

RCW 7.72.030(1). A product seller other than a manufacturer is liable to the claimant if the harm was proximately caused by:

> (a) The negligence of such product seller; or (b) Breach of an express warranty made by such product seller; or (c) The intentional misrepresentation of facts about the product by such product seller or the intentional concealment of information about the product by such product seller.

RCW 7.72.040.

The Court finds that there are four potentially applicable paths to liability for Fun-Tastic under the WPLA on the facts presented: (1) Fun-Tastic is a product manufacturer subject to the liability of a manufacturer as defined in RCW 7.72.030; (2) Fun-Tastic is a product seller which designed, produced, made, fabricated, constructed, or remanufactured the Ferris wheel or a component part of the Ferris wheel as defined in RCW 7.72.010(2) and is thus subject to the liability of a manufacturer as defined in RCW 7.72.030; (3) Fun-Tastic is a product seller or entity not otherwise a manufacturer which holds itself out as a manufacturer as defined in RCW 7.72.010(2) and is thus subject to the liability of a manufacturer as defined in RCW 7.72.030; or (4) Fun-Tastic is a product seller other than a manufacturer subject to liability of a product seller as defined in RCW 7.72.040. To win summary judgment, Fun-Tastic would have to establish no material question of fact exists as to its potential liability under any of these paths.

Fun-Tastic contends that it did not manufacture any part of the Ferris wheel and does not sell any products, so it cannot be liable under the WPLA because "only a 'product seller' who remanufactures the product at issue will bear the liability of a manufacturer." Dkt. 43 at 2, 3. In support of its motion, Fun-Tastic submits the declaration of its President Ronald Burback ("Burback") who declares, among other things, that "Fun-Tastic has not made any alterations or additions to the [Ferris] Wheel," "Fun-Tastic did not design, produce, make, fabricate, construct, or remanufacture the [Ferris] Wheel," and that "Fun-Tastic does not sell any products to its customers." Dkt. 38, Declaration of Ronald Burback ("Burback Decl."), ¶¶ 6–7.[2]

Relevant to the instant motion, Plaintiffs' first amended complaint makes several allegations related to Fun-Tastic's potential WPLA liability. Dkt. 15. First, Plaintiffs allege that Fun-Tastic is a product manufacturer because Fun-Tastic may have purchased the Ferris wheel and modified it from its original condition. Dkt. 15 ¶ 3.30. Second, Plaintiffs allege that Fun-Tastic may have incorporated "guides" on the wheel, metal tabs to help collapse and store the wheel when not in use, which caught on the door of the gondola and contributed to the accident. *Id*. Third, Plaintiffs allege Fun-Tastic affixed its labels and advertising to the Ferris wheel. *Id*. ¶ 3.32. Fourth, Plaintiffs allege that Fun-

---

[2] Plaintiffs argue that the Court must strike these paragraphs of Burback's declaration because they are "demonstrably different [from] the deposition taken months ago," and argue the declaration was provided for the sole purpose of creating a genuine issue of material fact. Dkt. 40 at 2. In Burback's deposition, he testified that Fun-Tastic replaced bolts and inspected the main axle of the Ferris wheel every year instead of doing a ten-year overhaul as the manufacturer recommends. Dkt. 41-1 at 4. The Court finds that Burback's declaration, while conclusory, does not "flatly contradict earlier testimony." *Kennedy Allied Mut. Ins. Co.*, 952 F.2d 262, 267 (9th Cir. 1991). The Court's disposition of this motion does not rely on these statements, so the Court declines to strike the testimony at this time.

Tastic is a product seller, because it owns the Ferris wheel, "a product the use of which is offered for sale," and its business involves "receiving money in exchange for taking their product to the fairgrounds and offering their product for use and consumption by those who pay admission to the fair." *Id*. ¶¶ 3.34–.35.

In briefing, Plaintiffs elaborate that Fun-Tastic was responsible for the installation or retention of "a dangerous metallic clip," used as secondary latch on the outside of the Ferris wheel's gondola door. Dkt. 40 at 1–2, 6. Plaintiffs argue this clip was a contributing factor in the accident, and Fun-Tastic's responsibility for its presence could constitute remanufacturing a component of the product. *Id*. Plaintiffs also argue that because Fun-Tastic "replac[ed] all of the bolts and inspect[ed] the main axle" every year instead of performing the ten-year overhaul the original manufacturer recommended, Fun-Tastic can be said to have remanufactured the Ferris wheel. Dkt. 40 at 4 (citing Dkt. 41-1 at 4). Moreover, Plaintiffs argue that by replacing "all the parts to reconstruct the Ferris wheel," Fun-Tastic can be said to have fabricated, made, constructed, or remanufactured the ride. Dkt. 40 at 14. The Court finds that Plaintiffs have likely established a sufficient question of material fact on at least one of the four paths to liability under the WPLA to preclude summary judgment. However, the Court finds a substantial lack of clarity remains whether selling access to an amusement park ride is properly construed as selling a product under the WPLA.

## 2. Persuasive Authority

There appears to be very little available authority on the product liability issues in this case. Each side presents a case based on another state's law which supports their position and presents their construction of *Washburn v. Beatt Equipment Co.*, 120 Wn.2d 246 (1992) and *Cadwell Industries, Inc. v. Chenbro America, Inc.*, 119 F. Supp. 2d 1110, 1114–15 (E.D. Wash. Sept. 1, 2000).

Fun-Tastic informs the Court that the only case it could locate "in which [the] Plaintiff alleged product liability against the owner/operator of an amusement ride" is a case from the Supreme Court of New Hampshire, *Sciliano v. Capitol City Shows, Inc.*, 475 A.2d 19 (N.H. 1984). Dkt. 36 at 6. There, a child was killed in an accident on an amusement ride. *Sciliano*, 475 A.2d at 20. The plaintiffs alleged the amusement ride operator should be held strictly liable as an entity which "supplies a product to the general public which may endanger the public safety." *Id*. at 25. The court found that the ride operator provided a service, not a product, and strict liability did not extend to service providers. *Id*. The court concluded that "we are not prone to extend strict liability in this jurisdiction," the State of New Hampshire. *Id*.

Plaintiffs distinguish *Siciliano* as lacking evidence that the ride operator performed any maintenance which could qualify as remanufacturing, and direct the Court to *Britton v. Dallas Airmotive, Inc.*, No. CV07–547–S–EJL, 2010 WL 797177 (D. Idaho Mar. 4, 2010), based on Idaho state law. Dkt. 40 at 11. There, the issue was whether the company which overhauled a helicopter engine originally manufactured by another company was subject to strict liability "as a product seller who remanufactured a product before it was

sold to the user or consumer." *Britton*, 2010 WL 797177 at *2–3. The court found summary judgment was not appropriate because disputed questions of fact remained on a variety of issues including whether the overhauling company held itself out as a manufacturer or product seller, remanufactured or serviced other parts of the machine, the extent of the remanufacturing done to the engine, and how the engine ultimately arrived in the hands of the final user. *Britton*, 2010 WL 797177 at *3. The court reasoned that "[i]n particular, it will be necessary to resolve the extent to which [the overhauling company] altered the engine before it was sold to the Plaintiffs." *Id*. Plaintiffs argue this case shows the variety of questions of material fact that preclude summary judgments in products liability cases.

The parties dispute the meaning of *Washburn*, where the defendant had provided the definition of manufacturer in the WPLA to the court for use in a jury instruction. *Washburn*, 120 Wn.2d at 258. The defendant wished to differentiate manufacturers, who were not covered by the statute of repose at issue, from contractors or installers of improvements to real property, who were covered. *Id.* The Washington Supreme Court emphasized that "[a]ll that is decided is whether defendant's activities were within the definition of manufacturer as proposed by defendant as a correct statement of the law." *Id*. at 257. It concluded that a jury question existed as to whether the defendant was a manufacturer. *Id.* at 261. Plaintiffs again argue that this case shows that determining what constitutes a manufacturer is a question for the trier of fact. Fun-Tastic relies on the court's description of how the defendant could be found to have "produced" the product because he took "an unfinished and unusable product, and by use of its labor and

materials made it economically valuable." Dkt. 43 at 3 (quoting *Washburn*, 120 Wn.2d at 261). Fun-Tastic argues this describes much more complex activity than any of the maintenance it may have performed. Here, the Court finds that *Washburn* is (1) not controlling because it did not analyze a claim under the WPLA and (2) includes substantially less complex formulations of the sub-definitions of "manufacture," such as "fabricate," meaning "form[ing] a whole by uniting parts." *Washburn*, 120 Wn.2d 261. It is not obvious from the analysis in *Washburn,* for example, whether the Ferris wheel could be considered unfinished and unusable without the replacement bolts, or whether by taking the wheel apart and replacing its bolts, Fun-Tastic could be fairly said to have fabricated it.

As discussed, the term "manufacturer" includes "a product seller or entity not otherwise a manufacturer that holds itself out as a manufacturer." RCW 7.72.010(1). The parties agree that the five-factor test our sister court developed in *Cadwell Industries*, 119 F.Supp.2d at 1114–15, using Illinois common law for guidance, allows a court to evaluate what actions an entity not otherwise a manufacturer must take to hold itself out as a manufacturer. Dkt. 40 at 9; Dkt. 43 at 3. *Cadwell* asks, from the perspective of the public and considering the circumstances at the time of purchase:

> (1) whether the entity labels or affixes to the product its own name, trade name, or trademark; (2) whether the entity identifies itself on advertisements or promotional literature as the maker of the product; (3) whether the entity participates in the manufacture, marketing and distribution of the product; (4) whether the entity derives economic benefit from placing the product in the stream of commerce; and (5) whether the entity is in a position to eliminate the unsafe character of the product.

1   119 F.Supp.2d at 1114–15. Relevant to these factors, Fun-Tastic argues that it did not
2   participate in designing the Ferris wheel, cannot eliminate "any allegedly unsafe
3   condition of the product," and "does not place advertisements claiming to be the
4   manufacturer of the product." Dkt. 43 at 4. However, Fun-Tastic concludes that the
5   *Cadwell* factors are ultimately "irrelevant" because "[t]he sale of a product is a
6   prerequisite for the application of the *Cadwell* factors." Dkt. 43 at 4. The Court finds this
7   test is a reasonable one but leads to inconclusive results on the facts of this case.

8        First, Plaintiffs allege in their complaint that Fun-Tastic labeled the Ferris wheel
9   with its own name and advertising. Dkt. 15, ¶ 3.32. No supporting evidence has been
10  cited, so this factor weighs only slightly in favor of the finding that Fun-Tastic holds
11  itself out as a manufacturer. Second, Plaintiffs do not allege that Fun-Tastic holds itself
12  out as the wheel's maker, and Fun-Tastic denies doing so, so this factor weighs against
13  the finding. Third, Fun-Tastic does not appear to have participated in the marketing or
14  distribution of the Ferris wheel, but as discussed, could be construed to have participated
15  in its manufacturing or remanufacturing, either of the whole or of a component. Fourth,
16  Fun-Tastic arguably derives economic benefit from placing the Ferris wheel in the stream
17  of commerce, as it is part of the attractions Fun-Tastic uses to drive admissions ticket
18  sales. Fifth, Fun-Tastic owns, controls, and maintains the wheel, and appears to be the
19  only entity in a position to eliminate its unsafe character. Therefore, it appears that Fun-
20  Tastic could be said to hold itself out as the Ferris wheel's manufacturer. The question
21  remains, however, whether it is a "product seller" which does so.

22

Having reviewed all of the parties' arguments and cited authority as well as the text of the statute, the Court finds a lack of clarity remains as to whether a product was for sale in this case and whether the seller manufactured or remanufactured that product, as those terms are defined under the WPLA.

C.  **Certification**

When there is no controlling Washington Supreme Court precedent on issues of state law, the Court is bound to apply the law as it believes the Washington Supreme Court would under the circumstances. *See Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938). "If there be no decision by [the state's highest] court then federal authorities must apply what they find to be the state law after giving 'proper regard' to relevant rulings of other courts of the State." *Commissioner v. Estate of Bosch*, 387 U.S. 456, 465 (1967). "Where an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940).

However, another option is available to the Court. Rather than guessing whether the Washington Supreme Court would decide, the Court may certify the question to the Washington Supreme Court for review. Under Washington law:

> When in the opinion of any federal court before whom a proceeding is pending, it is necessary to ascertain the local law of this state in order to dispose of such proceeding and the local law has not been clearly determined, such federal court may certify to the supreme court for answer

the question of local law involved and the supreme court shall render its
opinion in answer thereto.

RCW 2.60.020. As noted by the United States Supreme Court, certification saves "time, energy, and resources and [perhaps most importantly] helps build a cooperative judicial federalism." *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974).

As it stands, the Court sees the questions for certification as follows:

(1) Can the sale of the temporary use of a product such as an amusement ride constitute the sale of a product such that the product's owner would be subject to liability under the WPLA?
(2) Can disassembling and reassembling a product for maintenance be said to constitute manufacturing under the WPLA?
(3) Does the test articulated in *Cadwell Industries,* 119 F. Supp. 2d at 1114–15, to determine whether an entity holds itself out as a manufacturer accurately reflect the WPLA?

Before certifying the questions, the Court will afford the parties the opportunity to address whether the questions should be otherwise stated. The parties may submit simultaneous briefing that includes their proposed question for certification no later than May 3, 2019. The briefing shall not exceed five pages.

### III.  ORDER

Therefore, it is hereby **ORDERED** that the Court reserves ruling on Fun-Tastic's motion for partial summary judgment. Dkt. 36. The Clerk shall renote the motion for the Court's May 3, 2019 calendar.

Dated this 23rd day of April, 2019.

_____
BENJAMIN H. SETTLE
United States District Judge